UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHEMICO SYSTEMS, INC.,

      Plaintiff/Counter Defendant,

v.

SAMUEL SPENCER,

      Defendant/Counter Plaintiff,

and

MFSS HOLDINGS LLC, GPSI, L.L.C.
d/b/a/ GUIDEPOINT SYSTEMS,

      Defendant,

v.

LEON RICHARDSON,

      Counter Defendant.

Case No. 22-11027
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING
CHEMICO AND RICHARDSON'S PARTIAL MOTION TO DISMISS [23],
DENYING SPENCER'S MOTION FOR LEAVE TO AMEND THE
COUNTERCOMPLAINT [35], AND DENYING SPENCER'S MOTION
FOR LEAVE TO FILE A SURREPLY [45]**

---

This suit follows the total breakdown of the business relationship between Chemico Systems, Inc. and its former CEO, Leon Richardson, on the one hand, and Chemico's former CFO, Samuel Spencer, on the other. This opinion considers only one part of the larger dispute.

In particular, the Court considers whether Spencer has a legal basis to seek the 15% equity stake in Chemico that he says he was promised. In an effort to collect on that promise, Spencer brings breach-of-contract, promissory-estoppel, and fraud counterclaims. Chemico and Richardson have moved to dismiss these counterclaims, explaining that the equity stake was merely a gratuitous promise of future action rather than a contractual agreement, among other reasons. The Court agrees and will dismiss these claims.

And the Court finds that Spencer's later-filed motions for leave to amend the countercomplaint and for leave to file a surreply to the motion to dismiss fail to correct the legal deficiencies with the counterclaims. So it will deny the motions.

## I. Background

Because Chemico and Richardson seek dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the factual allegations in Spencer's countercomplaint as true and draws reasonable inferences from those allegations in his favor. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

### A.

In early 2017, Spencer was recruited to work at Chemico—first as a consultant and soon thereafter as Chief Financial Officer and Head of Mergers and Acquisitions. (ECF No. 20, PageID.399.) He worked under Richardson, Chemico's President and Chief Executive Officer. (*Id.*) Among other things, Spencer was responsible for the

finance and accounting departments, and his "directive" was to "fill the role as the successor for Richardson[.]" (*Id.*)

Upon joining the company as CFO, Spencer signed an employment agreement. The agreement stated that—in exchange for compensation, benefits, and bonuses—Spencer would "serve as CFO . . . and in such other position[s] . . . as are consistent with [his] position as CFO[.]" (ECF No. 20-1, PageID.413.) And it stated that Spencer "shall have such duties and responsibilities as are assigned" by the CEO (then, Richardson). (*Id.*) And, importantly, it contained a merger clause: "This agreement . . . contain[s] all of the terms of [Spencer's] employment with the company. The employment terms in this Agreement supersede any other agreements or promises made to [Spencer] by anyone . . . concerning [Spencer's] employment terms." (*Id.* at PageID.415.)

Despite these terms, Spencer says that his salary, benefits, and bonuses "did not accurately reflect the multiple management roles Spencer had at Chemico and the overall responsibility he had within the organization." (ECF No. 20, PageID.399.) As a result, says Spencer, Richardson promised him that Chemico would offer him "additional benefits and compensation in the future[,]" including equity in the company. (*Id.*) But "Richardson advised Spencer that in order for the equity agreement 'to work' the Parties would need to 'trust each other.'" (*Id.* at PageID.400.)

In August 2017, Spencer thought these promises would be fulfilled. He says that during a meeting, "Richardson, on behalf of Chemico, offered Spencer a 15% equity share in Chemico." (ECF No. 20, PageID.400.) Spencer accepted the offer, and

Richardson apparently acknowledged the arrangement at various times thereafter. (*Id.*) Afterwards, Richardson "reinforced" that Spencer's "equity would be paid out in a transaction with Chemico or Chemico's chemical management group." (*Id.* at PageID.401.)

Spencer believed that the equity was intended to compensate him for his—and by extension Chemico's—superior performance. (ECF No. 20, PageID.401.) Indeed, Spencer was also named Chief Procurement Officer in 2018 and then received a salary increase in early 2019. (*Id.* at PageID.402.) And Spencer received performance bonuses in 2019, 2020, and 2021. (*Id.* at PageID.403.) During this time, "Richardson also reiterated that Spencer's equity realization will be in the transaction with Chemico[.]" (*Id.*)

Starting in 2020, the company's financial outlook soured. (ECF No. 20, PageID.403.) But Spencer helped the company navigate these difficulties. (*Id.* at PageID.403–404.) Accordingly, Spencer was awarded an additional bonus and made a member of the Board. (*Id.*)

Despite Spencer's efforts, Chemico's prospects grew worse still in 2021. (ECF No. 20, PageID.404.) Soon, "Richardson began asking Spencer how he was going to raise equity to buy into Chemico." (*Id.*) Spencer was apparently shocked. (*Id.*) So he inquired into Richardson's "wrongful acts and attempt[s] to improperly divert him of his equity entitlement." (*Id.*)

Spencer was abruptly fired on October 4, 2021. (ECF No. 20, PageID.404.) Spencer claims he was never paid the severance owed under the employment agreement and that he was wrongfully denied his equity stake in Chemico. (*Id.*)

**B.**

In time, Chemico sued Spencer in Michigan state court, alleging breaches of the employment agreement and other claims. (ECF No. 1-2, PageID.10.) Spencer removed the case to this Court based on diversity of citizenship and then filed a counterclaim against Chemico and a third-party complaint against Richardson. (ECF Nos. 1, 20.) He brings four claims: (1) breach of the employment agreement against Chemico for failing to pay him severance; (2) breach of the "separate" contract for equity against Chemico; or, in the alternative, (3) promissory estoppel against Chemico for failing to honor promise of equity; and finally, (4) fraud against both Chemico and Richardson. (*See generally* ECF No. 20.)

Believing most of the counterclaims to be without merit, Chemico and Richardson filed a motion to dismiss the last three claims. (*See* ECF No. 23.)

After that motion was fully briefed, Spencer filed a motion for leave to file a second amended complaint, which Chemico and Richardson oppose. (ECF Nos. 35, 38.) And after that motion was fully briefed, Spencer filed another motion—this time moving for leave to file a surreply in opposition to the pending motion to dismiss. (ECF No. 45.) This motion is opposed as well. (ECF No. 46.)

All three motions are now before the Court. Given the adequate briefing, the Court considers them without further argument. *See* E.D. Mich. LR 7.1(f).

## II. Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), the Court "construes the complaint in the light most favorable" to Spencer and determines whether his "[counter]complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but the allegations must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Court will consider the counterclaims in turn.

### A.

Spencer first alleges that the oral promise to transfer a 15% equity interest in Chemico to him "created a binding, enforceable contract, supported by consideration." (ECF No. 20, PageID.406.)[1] But Chemico and Richardson say that "agreement" was nothing more than a gratuitous promise. (ECF No. 23, PageID.447.)

---

[1] The "Factual Background and General Allegations" section of the countercomplaint also references equity allegedly owed to Spencer in another company, Palm Tree Investments. (ECF No. 20, PageID.403.) But that company is not referenced in any of the claims or briefs, so the Court assumes it is not relevant to this case beyond providing further context of the relationship between the parties.

To proceed with a breach of contract claim under Michigan law, Spencer must first "show the existence of an enforceable contract." *See Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 448 (6th Cir. 2014). And "consideration is an essential element of any contract." *See Romero v. Buhimschi*, 396 F. App'x 224, 233 (6th Cir. 2010) (citing *Yerkovich v. AAA*, 610 N.W.2d 542, 546 (Mich. 2000)). Consideration exists where there is "a 'bargained-for exchange' as opposed to a gift or gratuity." *See Stackpole Int'l Engineered Prod., Ltd. v. Angstrom Auto. Grp., LLC*, 52 F.4th 274, 280 (6th Cir. 2022) (*quoting Gen. Motors Corp. v. Dep't of Treas., Revenue Div.*, 644 N.W.2d 734, 738 (Mich. 2002)). In other words, there must be "a benefit on one side, or a detriment suffered, or service done on the other." *Gen. Motors Corp.*, 644 N.W.2d at 738. But, under the preexisting-duty rule, "a contract fails for lack of consideration where the party promises something that he is already legally bound to do." *Romero*, 396 F. App'x at 233 (collecting cases). And "[t]his rule bars the modification of an existing contractual relationship when the purported consideration for the modification consists of the performance or promise to perform that which one party was already required to do under the terms of the existing agreement." *Yerkovich*, 610 N.W.2d at 546.

The preexisting-duty rule dooms Spencer's breach-of-contract claim. Though he repeatedly says that the contract for 15% equity in Chemico was "separate and apart from his employment relationship," he never identifies any consideration he gave to Chemico beyond what he was already legally bound to do by the employment agreement. Recall that Spencer pledged to "serve as CFO . . . and in such other

7

position[s] . . . as are consistent with [his] position as CFO[.]" (ECF No. 20-1, PageID.413.) And recall that he agreed to accept "such duties and responsibilities as are assigned" by the CEO. (*Id.*) Accordingly, any additional titles or duties he assumed that were consistent with his position as CFO cannot be consideration for a different contract and cannot be consideration to modify the existing contract. *See Yerkovich*, 610 N.W.2d at 546.

*Romero v. Buhimschi* is illustrative of this claim's deficiencies. *See* 396 F. App'x 224, 233 (6th Cir. 2010). There, a physician at the National Institutes of Health sued another physician for breach of an implied contract after she failed to list him as a co-author on a joint research project. *See id.* at 229. But the plaintiff-physician's "federal job duties required him to collaborate" with the other doctor. *Id.* at 234. So the Sixth Circuit affirmed the district court's finding that the claim was barred by the preexisting-duty rule: "any contract failed for lack of consideration because [the plaintiff] had a preexisting duty to collaborate with" the defendant. *Id.* The same result follows here. Spencer sues Chemico and Richardson for failing to provide him with equity promised to him in exchange for his work on behalf of the company. But his employment agreement already required him to do that work. So his claim is barred by the preexisting-duty rule.

Regardless, Spencer points to two possible sources of consideration. First, Spencer says he "acted to his detriment, taking a salary cut [compared to other job offers] and then working well beyond his role as CFO, in exchange for a separate agreement of equity ownership in Chemico." (ECF No. 31, PageID.502.) But the terms

of the employment agreement foreclose that argument. The agreement specifically stated that it "contain[s] all of the terms of [Spencer's] employment with the company" and that it "supersedes any other agreements or promises made to [Spencer] by anyone . . . concerning [Spencer's] employment terms." (ECF No. 20-1, PageID.415.) In other words, Spencer agreed to his compensation, agreed to take on additional titles and responsibilities consistent with his position as CFO, and he agreed that there were no other agreements or promises between the parties on these terms. And while Spencer suggests that his additional roles as Chief Procurement Officer and as a member of the Board were not "consistent with" his position as CFO, he never explains why. (*See* ECF No. 31, PageID.505–506.) And the Court does not see why that would be the case when Spencer held all of these titles simultaneously and "regularly received" salary increases and bonuses in recognition of his increased responsibilities with the company. (ECF No. 20, PageID.401–404.) And notably, once Spencer agreed to work at Chemico, he never took a pay cut or other detrimental act that might have been consideration for a separate contract for equity. So Spencer's work as an employee of Chemico cannot be consideration for a separate contract.

Second, Spencer says that he "was told that he would be the next President and CEO of Chemico. In exchange, Richardson offered [S]pencer a 15% equity interest in Chemico." (ECF No. 31, PageID.503.) This does not solve Spencer's problem. Instead, it identifies another promise made by Richardson to Spencer. But there is still no "bargained-for exchange" between the parties for the equity stake. *See Stackpole Int'l,* 52 F.4th at 280. If anything, this suggests that Spencer would get the

equity when he took on the responsibilities of the CEO. But even assuming that becoming CEO would put Spencer outside the terms of his CFO-focused employment agreement, Spencer never actually became the CEO. And he does not identify any CEO-specific duties he might have fulfilled. So Spencer still failed to provide consideration for the transfer of equity. *See Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1991) (finding no consideration—and thus no contract—between creditor and a debtor when creditor's "funds were never distributed" to the would-be debtor).

The cases Spencer relies on do not change this conclusion. Two of the three cases are state-court opinions applying other state's laws, so they are no help. *See Jodsaas v. Jodsaas*, No. A06-1614, 2007 WL 2993669, at *5 (Minn. Ct. App. Oct. 10, 2007) (applying Minnesota's dissolution-of-marriage statute); *Hartman v. Baker*, 766 A.2d 347, 351 (2000) (applying Pennsylvania common law). And to whatever extent *Hartman* is consistent with Michigan law, that case actually supports the Court's conclusion. *See* 766 A.2d at 352. The plaintiff-employee there *did* provide consideration for an equity stake in the company—he took a subsequent pay cut in exchange for equity. *Id.* In contrast, Spencer has pointed to no "detriment suffered, or service done" in exchange for the equity beyond what he agreed to in the employment agreement. *See Gen. Motors Corp.*, 644 N.W.2d at 738. And the final case, though at least applying Michigan law, is factually distinct. *See Venture Sols., LLC v. Meier*, No. 21-12299, 2022 WL 3337145, at *2 (E.D. Mich. June 22, 2022). There, the employment contract explicitly contemplated granting the plaintiffs equity. *Id.* (noting that parties would create a new corporate entity and then draft a

10

"detailed executive employment agreement providing for or contemplating, among other things, your equity ownership in that new entity[.]"). The agreement here had no such provision.

Because there was no consideration for an agreement to transfer a 15% equity interest in Chemico to Spencer, there was no contract to do so. *See Thomas*, 468 N.W.2d at 60 ("It is a fundamental principle of contract law that a promise to pay is not binding if made without consideration."). The breach-of-contract claim will be dismissed.

## B.

In the alternative, Spencer says that promissory estoppel should apply to force Chemico to honor its promise to give him 15% equity. (ECF No. 20, PageID.407–408.) Specifically, he says he "detrimentally relied on the promise of equity by continuing his employment at Chemico despite inadequate compensation[.]" (*Id.*)

"For the court to apply promissory estoppel under Michigan law, it must find that an implied agreement exists between the parties, in the absence of an express contract." *APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003) (citing *Barber v. SMH, Inc.*, 509 N.W.2d 791, 797 (Mich. Ct. App. 1993)). Indeed, courts will enforce promises in equity "only if there is no express contract governing the subject matter of the controversy." *Horton v. Gebolys*, No. 348461, 2020 WL 4236410, at *4 (Mich. Ct. App. July 23, 2020) (citing *Martin v. East Lansing Sch. Dist.*, 483 N.W.2d 656, 661 (Mich. Ct. App. 1992)). As explained above, there is an express contract governing the subject matter of this controversy—namely, Spencer's

11

employment agreement which covers his compensation at Chemico. So the employment agreement precludes the promissory-estoppel claim seeking additional compensation in the form of equity. *See Cece v. Wayne Cnty.*, 758 F. App'x 418, 424 (6th Cir. 2018) ("Appellants' argument is substantively defective, as they have failed to demonstrate how their promissory-estoppel claim is not precluded by the existence of the [memoranda of agreement], which cover precisely the same subject matter as the alleged promise Appellants assert provides the basis for promissory estoppel[.]" (applying Michigan law)). As the Sixth Circuit has explained, promissory estoppel is not designed to give a party to a contract "a second bite at the apple in the event it fails to prove breach of contract." *See Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990).

And this claim fails for a second reason. Promissory estoppel requires that the plaintiff relied on the promise to his detriment. *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 166 (Mich. Ct. App. 2008). But, as with the breach-of-contract claim, Spencer cannot use his continued employment with Chemico to show detrimental reliance. Put simply, Spencer did not rely on the equity promise when he did his job because the employment agreement already required him to do it and compensated him for it. *See Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990) ("[W]here . . . the performance which is said to satisfy the detrimental reliance requirement of the promissory estoppel theory is the same performance which represents consideration for the written contract, the doctrine of promissory estoppel is not applicable."); *Zaremba*, 761 N.W.2d at 166 (dismissing

12

promissory estoppel claim because the plaintiff "failed to identify any promises made . . . beyond those contained in the insurance policy"). And as already explained, the expansion of Spencer's roles and responsibilities over his tenure with Chemico was also contemplated by his employment agreement and thus not "separate and apart from his employment as CFO." (*See* ECF No. 31, PageID.511.)

Resisting this conclusion, Spencer makes two arguments. First, he says that the promise of equity covered different subject matter than his employment agreement. But he never explains how the subject matter is different. (ECF No. 31, PageID.509). And the allegations in the countercomplaint belie this argument in any case: "Spencer detrimentally relied on the promise of equity by continuing his employment at Chemico *despite inadequate compensation*, given the extent of value Spencer brought to Chemico." (ECF No. 20, PageID.407 (emphasis added); *cf.* ECF No. 20-1, PageID.413 (employment agreement providing for "Compensation and Benefits").) Thus, Spencer has not pointed to any allegations to suggest that he was promised equity outside of his employment relationship with Chemico, which is in turn governed by the terms of the employment agreement.

Second, Spencer cites *Lawley v. Siemons*. *See* No. 11-12822, 2011 WL 6000797, at *10 (E.D. Mich. Nov. 30, 2011). But that case involved an unjust-enrichment claim, which has different requirements. *See id.* And even assuming that the claims are legally analogous, the cases are factually distinct. That plaintiff received no compensation for his valuable efforts on behalf of a company, whereas Spencer received a salary, bonuses, and benefits from Chemico. *See id.* ("Defendant received

13

a benefit from Plaintiff in 1998 when Plaintiff introduced Defendant to business contacts and approved a 30% interest in ESI for Defendant. Defendant ultimately received $2,625,000 from the redemption of his interest in ESI without providing any compensation to Plaintiff."). So *Lawley* does not change things here.

In sum, promissory estoppel "may not be used to override the express agreement of the parties contained in written agreements." *APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003) (applying Michigan law). Spencer cannot assert promissory estoppel to seek compensation for his work at Chemico above and beyond what he agreed to in his employment agreement. So this claim will be dismissed.

## C.

Finally, Spencer says that both Chemico and Richardson committed fraud when they "materially misrepresented to Spencer that he would be entitled to 15% equity ownership in Chemico" both before he signed the employment agreement and after. (ECF No. 20, PageID.408.) Though he frames these claims differently at different points, the fraud claims fail no matter how they are framed.

## 1.

"Michigan law is well-established that parties [generally] cannot sue in tort over relationships governed by contract." *See Miller v. Joaquin*, 431 F. Supp. 3d 906, 914 (E.D. Mich. 2019); *see also DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 381 (6th Cir. 2015). Though Chemico and Richardson refers to this principle as the "economic-

14

loss doctrine," in this context, it is more appropriately called the *Hart* rule.[2]  *See Hart v. Ludwig*, 79 N.W.2d 895, 897 (Mich. 1956). Nonetheless, they did identify the correct legal rule. (ECF No. 23, PageID.461–462 (citing *Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.*, 559 N.W.2d 647, 658 (Mich. 1997)).)

"In *Hart* [*v. Ludwig*], Michigan's highest court noted the distinction between the legal duty which arises by operation of a contract and the fundamental concept of a legal duty to avoid conduct which creates liability in tort. '[I]f a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not.'" *Brock v. Consol. Biomedical Lab'ys*, 817 F.2d 24, 25 (6th Cir. 1987) (quoting *Hart*, 79 N.W.2d at 898)). In other words, the *Hart* rule directs that "if the alleged tort claim would not exist absent the contract, and the harm claimed does not extend beyond the realm of the contract, no action in tort will lie." *Marco Int'l, LLC v. Como-Coffee, LLC*, No. 17-CV-10502, 2018 WL 1790171, at *4 (E.D. Mich. Apr. 16, 2018). To make that distinction, courts are to focus on "whether the [counter-]plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation." *See Rinaldo's Const. Corp.*, 559 N.W.2d at

---

[2] While the economic-loss doctrine and the *Hart* rule have similar functions, they have distinct origins and purposes. *See* Vincent A. Wellman, Assessing the Economic Loss Doctrine in Michigan: Making Sense Out of the Development of Law, 54 Wayne L. Rev. 791, 818–25 (2008) (contrasting the economic-loss doctrine and the rule of *Hart v. Ludwig*). Perhaps inadvertently, the distinction seems to have faded in the caselaw in more recent years. *See, e.g.*, *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 381 (6th Cir. 2015) (citing both *Hart* and *Neibarger v. Universal Coops., Inc.*, 486 N.W.2d 612 (Mich. 1992), which established the economic-loss rule without reference to *Hart*, and referring to these rules generally as the "economic loss doctrine"); *Wellman*, *supra* at 821–23 (arguing that certain decisions have incorrectly conflated the two concepts).

658 (dismissing tort claim for negligent installation of phone lines that were installed pursuant to a contract because "there is no allegation that this conduct by the defendant constitutes tortious activity in that it caused physical harm to persons or tangible property; and plaintiff does not allege violation of an independent legal duty distinct from the duties arising out of the contractual relationship").

*Hart* presents an obvious problem for Spencer. Spencer's fraud claim is essentially that Richardson promised him equity in the company in recognition of his success, responsibilities, and future potential as an employee. (*See, e.g.*, ECF No. 20, PageID.402 ("Richardson was aware that Spencer did not receive a salary commensurate with his responsibilities, but repeatedly advised Spencer that Spencer's grant of equity in Chemico would properly reward Spencer for his work.").) In other words, Richardson's promises "relate to obligations created under" the employment agreement—namely, his compensation. So the promises of equity cannot serve as the basis for a separate and independent tort claim. And Spencer has not identified any duties that Richardson or Chemico violated that are separate and distinct from the employment relationship. *Cf. Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 448 (Mich. 2008) (permitting fraud claim to survive where allegations included "insurer's breach of its separate and independent duty not to deceive the insureds, which duty is imposed by law as a function of the relationship of the parties"). Accordingly, Spencer cannot state a *general* fraud claim.

That said, if the duty that forms the basis of Spencer's fraud claim existed at common law, then Spencer's fraud claim could exist absent the agreement. *See Marco*

*Int'l, LLC v. Como-Coffee, LLC*, No. 17-CV-10502, 2018 WL 1790171, at *4–5 (E.D. Mich. Apr. 16, 2018). To this end, courts continue to recognize fraudulent inducement and bad-faith promises as viable tort claims, notwithstanding *Hart*. But the factual allegations in Spencer's countercomplaint do not establish these claims either.

**2.**

Consider a potential fraudulent-inducement claim for promises of equity made to persuade Spencer to sign the employment agreement. (*See* ECF No. 20, PageID.399 ("Due to the reduced salary Spencer accepted at Chemico . . . Richardson and Chemico indicated that Chemico would offer Spencer additional benefits and compensation in the future separate and apart from Spencer's employment relationship. This included promises of equity with Chemico.").)

Fraudulent inducement "addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort." *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 778 (E.D. Mich. 2014) (citing *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 544 (Mich. Ct. App. 1995)). A critical component of a fraudulent-inducement claim is "reasonable reliance" on the misrepresentation. *See Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 499 (6th Cir. 2014).

Spencer's reliance on any promise of equity made before he signed his employment agreement would have been unreasonable given the agreement's merger clause. "Michigan law . . . establishes that when a written contract, with a[ merger]

17

clause, expressly contradicts a [party's] allegedly fraudulent representations not contained in the contract, a plaintiff's reliance on such representations cannot be reasonable." *See Ram Int'l*, 555 F. App'x at 499 (cleaned up); *see also Novak*, 599 N.W.2d at 553 ("[T]he written contract, with its integration clause, expressly contradicted [certain alleged promises,] making plaintiff's alleged reliance on these statements unreasonable."); *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 419 (Mich. Ct. App. 1998) ("[T]he merger clause made it unreasonable for plaintiff's agent to rely on any representations not included in the letter of agreement."). Here, Spencer claims that he relied on the promise of equity even after he (1) agreed to be bound by an employment contract that did not include equity and (2) agreed that the contract "contain[ed] all of the terms of [his] employment with the company." That was unreasonable. As one court succinctly put it, Spencer "should not be heard to complain that [he] relied on oral promises regarding additional or contrary contract terms when there is written proof, signed by both parties, to the contrary." *See Star Ins. Co. v. United Com. Ins. Agency, Inc.*, 392 F. Supp. 2d 927, 930 (E.D. Mich. 2005).

As one might expect, Spencer next attacks the merger clause. He argues that a merger clause does not preclude *all* fraud claims. (*See* ECF No. 31, PageID.516.) True, a "distinction must be drawn between fraud claims based on 'collateral agreements' not expressed in the contract—which a merger clause invalidates—and claims stemming from 'representations of fact made by one party to another to induce that party to enter into the contract'—which a merger clause does *not* invalidate."

18

*Ram Int'l*, 555 F. App'x at 499–500 (citing *Barclae v. Zarb*, 834 N.W.2d 100, 118 (Mich. Ct. App. 2013)). In other words, while it is unreasonable to rely on prior collateral agreements, a party could reasonably rely "upon representations made by another party regarding things outside the scope of the contractual terms, such as the other party's solvency, indebtedness, experience, clientele, client retention rate, business structure, etc." *See Star Ins.*, 392 F. Supp. 2d at 930.

This distinction forecloses Spencer's claim. As explained, this case clearly falls into the "collateral agreement" camp because the promise of equity contradicted the terms of Spencer's compensation set forth in the employment agreement. The merger clause, by its own terms, extinguished such an agreement. (*See* ECF No. 20-1, PageID.415 ("The employment terms in this agreement supersede any other agreements or promises made to [Spencer] by anyone . . . concerning [Spencer's] employment terms.").) The cases that Spencer relies on fall into the "representation of fact" camp, and so actually support this conclusion. *See Abbo v. Wireless Toyz Franchise, L.L.C.*, No. 304185, 2014 WL 1978185, at *6 (Mich. Ct. App. May 13, 2014) (permitting claim for misrepresentations of fact related to the defendant's high costs and poor performance); *JAC Holding Enterprises, Inc. v. Atrium Cap. Partners, LLC*, 997 F. Supp. 2d 710, 731 (E.D. Mich. 2014) (permitting claim for misrepresentations of fact related to the defendant's financial condition).

In sum, the merger clause in the employment agreement forecloses Spencer's fraudulent-inducement claim. *See Carey v. Foley & Lardner, LLP*, No. 321207, 2016 WL 4203435, at *10 (Mich. Ct. App. Aug. 9, 2016) ("A party's reliance on oral promises

or representations made before entering into a fully integrated written contract is deemed to be per se unreasonable.").

### 3.

Next consider any bad-faith promises made after Spencer signed the employment agreement. (*See* ECF No. 20, PageID.401 (alleging that Richardson repeated the promises of equity during Spencer's tenure at Chemico).) The "general rule" is that "broken promises of future action are not actionable torts." *See Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 817 (Mich. 1976). But Spencer is correct that broken promises can be actionable if the promises were "made in bad faith without intention of performance." *See Gage Prod. Co. v. Henkel Corp.*, 393 F.3d 629, 645 (6th Cir. 2004) (quoting *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976)). However, "evidence of fraudulent intent, to come within the exception must relate to conduct of the actor at the very time of making the representations, or almost immediately thereafter." *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 156 (Mich. Ct. App. 2004).

Spencer has not plausibly pled a bad-faith promise. Beyond citing conclusory statements in the countercomplaint to suggest that Richardson "was aware of the falsity of this promise when it was made," Spencer makes no factual allegations that Richardson made these promises in bad faith. (ECF No. 12, PageID.144); *cf. Foreman v. Foreman*, 701 N.W.2d 167, 178 (Mich. Ct. App. 2005) (finding sufficient evidence of bad faith where Defendant promised his soon-to-be-ex-wife that he had no intention to sell their business when he made contemporaneous, contradictory statements to

20

others that he did plan to sell it). Indeed, the countercomplaint acknowledges that Richardson considered Spencer to be his successor, groomed him for the position, and frequently discussed the promised transfer of equity, suggesting that Richardson intended to keep his promises until Chemico's financial condition deteriorated. (ECF No. 20, PageID.400–404); *see also DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 383 (6th Cir. 2015) (finding that allegations of partial performance defeated inference of bad faith under Michigan law).

Without more, "evidence of a broken promise is not evidence of fraud." *See Blackward Properties, LLC v. Bank of Am.*, 476 F. App'x 639, 643 (6th Cir. 2012) (citing *Derderian*, 689 N.W.2d at 156).

\* \* \*

So Spencer's fraud claims fail because Richardson's promise of equity is not generally actionable in fraud, because reliance on any pre-contractual promises was unreasonable, and because any post-contractual promises were not plausibly made in bad faith.

### D.

In conclusion, the Court will grant Chemico and Richardson's partial motion to dismiss because Spencer has failed to state a claim for breach of contract, promissory estoppel, or fraud.

### III. Motion to Amend

The Court will next consider Spencer's motion to amend the countercomplaint, which was filed after the motion to dismiss was fully briefed.

21

Spencer claims to have discovered additional evidence to support the claims discussed above. In particular, he points to several emails that "provide further proof that Richardson promised Spencer 15% equity in Chemico that was separate and distinct from the Employment Agreement Spencer executed with Chemico." (ECF No. 35, PageID.593.) The proposed amended countercomplaint adds four relatively similar paragraphs. (ECF No. 35-1, PageID.616–617.) The first is representative: "Spencer referenced Richardson's promise in an email dated September 12, 2017 to two advisors of Chemico's board of directors . . . . Spencer noted that his equity participation would be included in a separate document. None of Chemico's agents, including Richardson, denied or disowned Spencer's reference to the promised equity." (*Id.* at PageID.616.)

Chemico and Richardson oppose the motion to amend, arguing that the amendment is futile. (ECF No. 38, PageID.666–671.) The Court agrees.

A motion to amend is futile "where a proposed amendment would not survive a motion to dismiss." *Banerjee v. Univ. of Tennessee*, 820 F. App'x 322, 329 (6th Cir. 2020). Even with these new allegations, the proposed amended countercomplaint would not survive a motion to dismiss. Rather than provide new allegations that would permit Spencer to state a claim, the new paragraphs merely add detail to allegations that were already made in the operative countercomplaint. The countercomplaint said—and the Court accepted as true—that Richardson promised Spencer equity and that Spencer expected the equity to be transferred in a separate document. (*See, e.g.*, ECF No. 20, PageID.399, 400, 401.) And the countercomplaint

22

gave the Court no reason to expect that Chemico's agents would deny that the promises were made. But a promise that the equity would be transferred via a separate document does nothing to show that Spencer provided consideration for the agreement. And it does not change whether Spencer detrimentally relied on such a promise or whether the promise concerned a legal duty separate and distinct from the employment agreement. Nothing in the proposed amendment countercomplaint changes these conclusions.

So the Court will deny this motion to amend as futile.

### IV. Motion to File Surreply

Finally, the Court will consider Spencer's motion for leave to file a surreply, which was filed after both of the other motions were fully briefed. As with the motion to amend, Spencer wants the Court to consider two additional documents where various parties discussed the promise of equity. (ECF No. 45, PageID.714.) First, he asks the Court to consider a letter from Chemico's legal team discussing his "onboarding, compensation and *eventual acquisition* of equity and leadership of the Chemico companies." (ECF No. 45-1, PageID.728–729 (emphasis added).) The letter also says that "we will need the Chemico valuation completed so that [someone] can begin to flesh out details for you and [Richardson] to consider." (*Id.*) The second is an e-mail chain between Spencer, Richardson, and another individual arranging for that valuation. (*Id.* at PageID.731–736.)

The decision to grant or deny leave to file a surreply is committed to the sound discretion of the Court. *See Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 549 (6th

Cir. 2014); *Nolan LLC v. TDC Int'l Corp.*, No. 06-14907, 2009 WL 1583893, at *2 (E.D. Mich. June 5, 2009). The Court will deny the motion for similar reasons to those just discussed. Namely, these documents merely add detail to Spencer's operative countercomplaint rather than supply new allegations that would permit him to state a claim. Simply put, adding documentary evidence of negotiations over equity to the countercomplaint does not solve its problems. "Mere discussions and negotiations cannot be a substitute for the formal requirements of a contract." *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1991). In addition, the Court could not consider these documents without converting the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Accordingly, the motion for leave to file a surreply will be denied.

## V. Conclusion

For the foregoing reason, Chemico and Richardson's partial motion to dismiss is GRANTED. (ECF No. 23.) Spencer's motions for leave to file an amended countercomplaint (ECF No. 35) and for leave to file a surreply (ECF No. 45) are DENIED. Spencer may only proceed on Count I of his countercomplaint.

SO ORDERED.

Dated: February 14, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

24